UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **MOHAMED MANA SALEH** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-425** |
| **UNITED STATES DEPARTMENT OF JUSTICE, ET AL.** | **SECTION: "H"(2)** |


### FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States Citizenship and Immigration Services ("USCIS") denied Plaintiff Mohamed Mana Saleh's application for naturalization (the "Instant Application") on May 23, 2012. Plaintiff petitioned this Court for review pursuant to 8 U.S.C. § 1421(c).  The matter was tried before the undersigned on March 11 and 12, 2013.  Having considered the evidence admitted at trial, the arguments of counsel, and the briefing submitted by the parties, the Court issues the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

1

**FINDINGS OF FACT**

From a preponderance of the evidence, the Court finds as follows:

**Summary of Background:**

1. Plaintiff is a 39-year-old national and citizen of Yemen.

2. Plaintiff was accorded lawful permanent residence status in the United States in 1989.

3. On January 9, 1998, Plaintiff filed an Application for Naturalization, INS Form N-400, with the former Immigration and Naturalization Service ("INS").

4. On July 19, 1999, the former INS denied the application.

5. On August 9, 2002, Plaintiff filed a second Application for Naturalization, INS Form N-400, with the former INS.

6. USCIS denied the application on February 8, 2011.[1]

7. On February 12, 2010, Plaintiff filed the Instant Application.

8. On February 8, 2011, USCIS issued a written decision denying the Instant Application. The decision was originally dated January 11, 2011.

9. Plaintiff administratively appealed the denial of his naturalization application by filing a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, dated July

---

[1] The second application for naturalization was never formally adjudicated. Thus, the denial of the Instant Application also constituted a denial of the second application.

8, 2011.

10. On March 27, 2012, Plaintiff appeared for a sworn N-336 hearing before USCIS Officer Sandra Peacock.

11. On May 23, 2012, USCIS affirmed in writing its denial of the Instant Appication.

12. On February 14, 2012, Plaintiff filed this claim for injunctive and mandamus relief.


**Plaintiff's Admission into the United States:**

13. On June 8, 1988, Mohamed Mana Saleh filed a form I-130, Petition for Alien Relative, on behalf of Plaintiff, his son. This form lists Plaintiff's date of birth as "3/10/73."

14. The former INS approved Mr. Saleh's form I-130 on November 1, 1988.

15. On April 29, 1989, Plaintiff filed an INS Form 230, Application for Immigrant Visa and Alien Registration. His date of birth was inadvertently listed as "4/10/73."

16. On September 11, 1989, Plaintiff's immigration status was adjusted by INS to that of a lawful permanent resident. INS stamped Plaintiff's form DS 1-551 with a form I-551 stamp and an immigration admission stamp.

17. On September 11, 1989, Plaintiff was issued a form I-551 Permanent Resident Card. Plaintiff was issued the Alien Number A040-060-153.


**The Instant Application for Naturalization**

3

18. On April 19, 2010, Plaintiff filed the Instant Application.

19. On September 13, 2010, Officer Randy Stebbins, a naturalization examiner with USCIS, interviewed Plaintiff under oath regarding this application.

20. Officer Stebbins asked Plaintiff whether he had knowingly committed any crime for which he had not been arrested; whether he had ever been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason; and whether Plaintiff had ever given false or misleading information to a United States government official while applying for any immigration benefit.

21. Plaintiff orally affirmed that all information on the Instant Application was true and correct.

22. During this same interview, Plaintiff executed two written, sworn statements. On the first sworn statement, Plaintiff stated that he had never "been arrested, detained or questioned by any police, military, or intelligence agencies."

23. On the second sworn statement, Plaintiff stated that he "first became aware of [his] duty to register with the United States Selective Service System," at the instant naturalization interview.

24. During his sworn N-336 hearing before USCIS Officer Peacock, Plaintiff confirmed that he understood the word "detained" to mean "stopped and questioned." When questioned regarding his failure to report his detention at the airport *in Jordan* on the Instant Application, Plaintiff admitted that he was, in fact, detained at John F. Kennedy

4

International Airport ("JFK").[2] Plaintiff testified that he did not disclose the detention and seizure because he was not arrested.

25. Plaintiff further testified during this hearing that he did not know what the Selective Service was when he received materials regarding the naturalization process, and that he was unaware of his obligation to register.

**Plaintiff's Detention at JFK Airport on August 24, 1995**

26. On August 24, 1995, Plaintiff was detained at JFK as he attempted to board a Royal Jordanian flight bound for Amman, Jordan. His final destination was Yemen.

27. Plaintiff was stopped in the jet way by Special Agent William Wilson ("SA Wilson"), a Customs Inspector who formed part of the Contraband Enforcement Team (CET).

28. SA Wilson advised Plaintiff of the currency reporting requirements of 31 U.S.C. § 5311, *et seq*. Plaintiff was informed that he was required to file a report with the United States Government if he was transporting monetary instruments to a foreign country totaling in excess of $10,000.00.

29. SA Wilson provided Plaintiff with a form CB 503, which explained the currency reporting requirements.

---

[2] Officer Peacock inadvertently referred to the location of the airport in which Plaintiff was detained as Jordan. Interestingly enough, Plaintiff immediately recognized Officer's Peacock's mistake and understood that she was referencing his detention at JFK.

30. Plaintiff subsequently executed a written statement that he was transporting $2,900.

31. SA Wilson searched Plaintiff and his carry-on luggage and discovered $19,952 in U.S. currency and $29,000 in negotiable bonds.

32. Plaintiff was detained and transported by van to the CET office for further processing. The CET office was located on the opposite end of the airport.

33. The monetary instruments were confiscated at the CET office.

34. The United States Attorney was contacted and declined to prosecute. Plaintiff was released and allowed to keep $472 to continue his trip.

35. Plaintiff subsequently filed suit against the United States and the confiscated funds were returned.

**Plaintiff's Registration for Selective Service**

36. Plaintiff stated in Part G of the Instant Application entitled "Selective Service Registration" that he has not "lived in the United States at any time between his 18th and 26th birthdays in any status except lawful nonimmigrant." Part G instructs that all men who have lived in the United States between the ages of 18 and 26 must register with the Selective Service System before applying for naturalization.

37. At trial, Plaintiff conceded that he lived in the United States between his 18th and 26th birthdays yet failed to register for the Selective Service.

6

38. Plaintiff was informed of his obligation to register for Selective Service during his naturalization interview in May, 1999.

**Plaintiff's New York Conviction of August 3, 2005**

39. On August 3, 2005, officials with the New York State Department of Taxation and the New York State Police observed several compact Discs and DVD recordings for sale at Anis Super Deli.

40. After confirming the discs were counterfeited, officers entered the store and confronted Plaintiff.

41. Plaintiff informed the officers that he owned Anis Super Deli and that he was responsible for the sale of the counterfeit items.

42. Plaintiff was subsequently arrested in Rochester, New York on charges of Trademark counterfeiting in the Second Degree (a felony), and Failure to Disclose the Origin of a Recording in the Second Degree (a misdemeanor).

43. On October 31, 2005, Plaintiff pleaded guilty to a single count of Failure to Disclose the Origin of a Recording. He was fined $1,200 and received no jail time. As a result of this guilty plea, the other charges were dismissed.

**CONCLUSIONS OF LAW**

1. The Court has jurisdiction over this matter pursuant to 8 U.S.C. § 1421(c). Venue is proper as a substantial part of the events or omissions giving rise to this matter occurred in the Eastern District of Louisiana. 28 U.S.C. § 1391(e)(1).

2. An applicant whose application for naturalization has been denied can seek judicial review in a federal district court under 8 U.S.C. § 1421(c). Section 1421(c) provides that such review shall be *de novo* and that the court shall make its own findings of fact and conclusions of law. 8 U.S.C. § 1421(c). *See further Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002) ("Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court de novo").

3. Strict compliance with all prerequisites for the acquisition of citizenship is required. *Fedorenko v. United States*, 449 U.S. 490, 522 (1981). A naturalization applicant bears the burden of establishing eligibility. *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 637 (1967). Thus, all doubts are resolved "in favor of the United States and against the claimant." *Berenyi*, 385 U.S. at 637 (internal quotations and citations omitted).

4. The applicant must carry his burden of proof by a preponderance of the evidence. *See* 8 C.F.R. § 316.2(b) ("The applicant shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization"). Despite the clear wording of this regulation, the Government argues in vain that Plaintiff must

8

establish good moral character—a statutory prerequisite for naturalization—by clear and convincing evidence. The out-of-Circuit authorities cited by the Government in support of this proposition rely on *Berenyi*. In *Berenyi*, the Supreme Court unequivocally held that the Government must prove its case by clear and convincing evidence "when it seeks to strip a person of citizenship already acquired." *Berenyi*, 385 U.S. at 636. Significantly, the Court did not address whether this standard applies to a naturalization applicant. *See Hamdi v. U.S.C.I.S.*, No. EDCV 10–894 VAP (DTBx), 2012 WL 632397, at *10 (C.D. Cal. Feb. 25, 2012) (interpreting *Berenyi*). The cases cited by the Government are therefore unpersuasive, particularly in light of the clear wording of 8 C.F.R. § 316.2(b), and the fact that no Fifth Circuit case has been found in support of the Government's argument. This Court joins the vast majority of courts to address the issue in holding that Plaintiff must prove *all* criteria for naturalization by a preponderance of the evidence. *See, e.g.*, *Taylor v. United States Attorney General*, No. 11–35751, 2013 WL 223150, at *2 (9th Cir. Dec. 7, 2012); *Oropeza v. Napolitano*, No. H–09–2604, 2010 WL 4878837, at *7 (S.D. Tex. Nov. 23, 2010); *Abusamhadaneh v. Taylor*, 873 F. Supp. 2d 682, 716 (E.D. Va. 2012); *Hamdi*, 2012 WL 632397, at *10.

5. In order to be eligible for naturalization, an alien must establish that he or she:

    a. Is at least 18 years of age. 8 U.S.C. § 1445(b); 8 C.F.R. § 316.2(a)(1).

    b. Is a lawful permanent resident. 8 U.S.C. § 1429; 8 C.F.R. § 316.2(a)(2).

c. Has resided continuously within the United States for at least 5 years after obtaining lawful permanent residence. 8 U.S.C. § 1427(a)(1); 8 C.F.R. § 316.2(a)(3).

d. Has been physically present in the United States for at least 30 months of the 5 years preceding the date of filing the application for naturalization. 8 U.S.C. § 1427(a)(1); 8 C.F.R. § 316.2(a)(4).

e. Has resided for at least 3 months in the state where the application for naturalization was filed. 8 U.S.C. § 1421(a)(1); 8 C.F.R. § 316.2(a)(5).

f. Has resided continuously within the United States from the date of application for naturalization up to the time of admission to citizenship. 8 U.S.C. § 1427(a)(2); 8 C.F.R. § 316.2(a)(6).

g. Has been a person of good moral character for the 5 years immediately preceding the application for naturalization up to the time of admission for citizenship. 8 U.S.C. § 1426(a)(3); 8 C.F.R. § 316.2(a)(7).

h. Has been attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States. 8 U.S.C. § 1426(a)(3); 8 C.F.R. § 316.2(a)(7).

i. Is willing "(A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under

   civilian direction when required by the law." 8 U.S.C. § 1448(a)(5)(A)–(C).

 j. Is not: barred as a subversive, 8 U.S.C. §§ 1424, 1427(f), and 8 C.F.R. § 313; a member of the communist party, 8 U.S.C. § 1424(a); a deserter during war time who was convicted by court martial or civil court, 8 U.S.C. § 1425; an alien who has removal proceedings pending against him/her or an outstanding and final order of deportation, 8 U.S.C. § 1429; an alien who applied for and received relief from the Selective Service System based on his or her alienage, 8 U.S.C. § 1426(a).

 k. Can demonstrate: an elementary level of reading, writing, and understanding of the English language, 8 U.S.C. § 1423(a)(1), 8 C.F.R. § 312.1; knowledge and understanding of the fundamentals of the history and government of the United States. *See* 8 U.S.C. § 1423(a), 8 C.F.R. § 312.2.

6. The parties have stipulated that Plaintiff can establish all statutory pre-requisites for naturalization except lawful permanent residence and good moral character. The Court addresses each requirement in turn.

7. An applicant is considered a lawful permanent resident if he or she has "been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). It is a long-standing principle in the Fifth Circuit that an alien who acquires permanent residence status through fraud, misrepresentation, or mistake is not, and never

has been, a lawful permanent resident. *See In re Longstaff*, 716 F.3d 1439, 1141 (5th Cir. 1983) ("The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity."); *Ramos–Torres v. Holder*, 637 F.3d 544, 548 (5th Cir. 2011) ("If, as a matter of law, [the alien] was not eligible to receive LPR status [when he acquired it], then he could not, and therefore did not, *lawfully* acquire it") (emphasis and alterations in original).

8. The Court finds that Plaintiff has established lawful permanent residence status by a preponderance of the evidence.

9. The phrase "good moral character" is fleshed out in the Immigration and Nationality Act ("INA") and the regulations promulgated thereunder. Both the INA and the regulations provide a list of acts that conclusively demonstrate a lack of good moral character. *See* 8 U.S.C. § 1101(f)(1)–(9); 8 C.F.R. § 316.10(b)(1)–(2). The regulation also provides that certain other acts raise a rebuttable presumption against finding good moral character. *See* 8 C.F.R. § 316.109(b)(3)(i)–(ii). A "catch-all" provision in the statutory scheme provides that non-enumerated acts or characteristics can, in the absence of extenuating circumstances, demonstrate lack of good moral character. *See* 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(3)(iii). Claims of good moral character are to be evaluated "on a case-by-case basis taking into account the elements enumerated in [8 C.F.R. § 316.10] and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). The Court

|     | |
| --- | --- |
|     | may consider the applicant's conduct prior to the statutory period in order to determine good moral character during the statutory period. *Id.* |
| 10. | An applicant is precluded from establishing good moral character if he or she gives false testimony with the subjective intent of obtaining immigration benefits, regardless of whether the information provided was material. *See* 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi); *Kungys v. United States*, 485 U.S. 759, 780 (1988).  "Misrepresentations made for other reasons like embarrassment, fear, or a desire for privacy do not meet this requirement." *Gonzalez–Maldonado v. Gonzalez*, 487 F.3d 975, 977 (5th Cir. 2007) (citing *Kungys*, 485 U.S. at 780).  For purposes of the statutory scheme, "testimony" is limited to oral statements made under oath. *Kungys*, 485 U.S. at 780.  Thus, false assertions on a written naturalization application do not constitute false testimony. *Kariuki v. Tarango*, No. 12–10174, 2013 WL 644469, at *8 (5th Cir. 2013) (citing *Kungys*, 485 U.S. at 780).  In the Fifth Circuit, however, "oral testimony before an immigration officer that the false assertions contained within the written application are true *does* constitute false testimony." *Kariuki*, 2013 WL 644469, at *8 (emphasis added) (citing *Kungys*, 485 U.S. at 780); *see also Ansah v. Ashcroft*, 88 F. App'x 687, 688 (5th Cir. 2004) (per curiam); *Noveron–Rodriguez v. Holder*, 375 F. App'x 433, 435 (5th Cir. 2010) (per curiam). |
| 11. | The Court finds that Plaintiff cannot establish good moral character by a preponderance of the evidence.  In response to the question on the Instant Application "[h]ave you ever been |

arrested, cited, or detained by any law enforcement officer (including USCIS or former INS and military officers) for any reason[,]" Plaintiff checked "yes" and disclosed his arrest for "Selling fake DVD's" in 2005. Plaintiff orally confirmed the answer to this question under oath in his interview with Officer Stebbins. By failing to disclose his detention at JFK Airport in 2005, Plaintiff provided false testimony in order to obtain an immigration benefit.

12. There can be no doubt that Plaintiff was "detained" by a law enforcement officer at JFK Airport on August 24, 1995. Plaintiff was stopped in the jet way before boarding his flight and explained the reporting requirements of 31 U.S.C § 5311. After executing a written statement, SA Wilson searched Plaintiff's person and carry-on luggage. Plaintiff was subsequently transported by van to a CET office on the opposite end of the airport.

13. Having established that Plaintiff provided false testimony, the Court next inquires whether that testimony was made with the subjective intent of obtaining immigration benefits. Plaintiff testified that he believed his statements to be truthful, because he was never "detained"—he felt free to leave at any time during the stop. Plaintiff also denied being transported to the CET office following the search.

14. Plaintiff's testimony is not credible for multiple reasons. First, Plaintiff shows a history of mendacity when interacting with law enforcement. For example, when Plaintiff was arrested in New York, he informed officers that he owned Anis Super Deli and was responsible for the counterfeit items for sale. Plaintiff subsequently testified at trial that

14

neither of these statements was true.[3] Additionally, Plaintiff has not registered for the Selective Service and has repeatedly denied knowledge of the obligation to do so when questioned by immigration officials. Yet the record reveals that Plaintiff was aware of his obligation to register since at least May, 1999.

15. Second, when confronted with difficult questions about past events, Plaintiff repeatedly testified that he could not remember or does not know what happened. Plaintiff's chronic inability to recall past events with clarity further undermines his testimony.

16. Third, Plaintiff's testimony is directly contradicted by SA Williams' testimony, as well as the narrative summary that was generated from SA Williams' written report.

17. Were Plaintiff's false testimony considered to be immaterial, this Court may have been more inclined to find that Plaintiff did not act with the requisite intent. *See Kungys*, 485 U.S. at 780–81 ("It will be relatively rare that the Government will be able to prove that a misrepresentation that *does not* have the natural tendency to influence the decision regarding immigration or naturalization benefits was nonetheless made with the subjective intent of obtaining those benefits") (emphasis added). Conversely, when false testimony forecloses a line of questioning into the applicant's past that could influence the decision on his eligibility for naturalization, the most logical conclusion is that the statement was

---

[3] The record is unclear as to whether Plaintiff actually owned Anis Super Deli. The Court need not make a finding on this issue. Rather, the Court notes that Plaintiff's inconsistent statements further underscore his lack of credibility as a witness.

made for the purpose of obtaining immigration benefits. *See Kungys*, 485 U.S. at 807 n.3 (White, J., dissenting) ("[I]t is quite clear that when misrepresentations of fact are made in the process of applying for immigration and naturalization benefits, in a very real and immediate sense those misrepresentations are made 'for the purpose of obtaining' such benefits").

18. Plaintiff's false testimony regarding his seizure at JFK undoubtedly prevented a line of questioning that would have effected his eligibility to naturalize. Plaintiff can provide no credible reason for failing to disclose this information, nor can this Court find any in the record. Plaintiff's repeated non-truths, non-disclosures, and convenient lapses of memory fully support the Government's argument that Plaintiff intentionally concealed his JFK detention from immigration officials in order to obtain a favorable disposition on his naturalization application. Consequently, Plaintiff is precluded from establishing the good moral character required to naturalize.

19. If any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such. Likewise, if any of the foregoing Conclusions of Law constitute Findings of Fact, they are adopted as such.

## CONCLUSION

During the course of his efforts to acquire naturalized citizenship, Plaintiff has

demonstrated a noticeable lack of candor.  In his latest attempt to naturalize, Plaintiff provided false testimony for the purpose of obtaining an immigration benefit.  Since Plaintiff has not proven himself to be a person of good moral character, he is ineligible for United States citizenship.  Therefore, the Instant Application is DISMISSED.  Judgment will be entered in favor of the United States.

The Court notes in passing that at some future time Plaintiff may renew his efforts to achieve naturalized citizenship.  If and when this occurs, Plaintiff is urged to be forthright and truthful.

New Orleans, Louisiana, this 25th day of March, 2013.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

17